CITIZENS INSURANCE COMPANY OF MISSOURI, Appellant, v. SCHNEIDER et al.

### Division Two, May 21, 1900.

**Sale Under First Mortgage: ERAUD: TENDER.** A tender by the assignee of a second mortgage of the entire prior debt, made after sale under the first mortgage to the purchaser at such sale, who had previously thereto honestly and with his own money privately purchased said first mortgage note, does not authorize the setting aside of such foreclosure sale and deed of trust on the application of one who had, prior to such foreclosure and private purchase, become the assignee of the second mortgage, in pursuance to an agreement with the original mortgagor that he should take up said first and all subsequent mortgages and receive in lieu thereof one mortgage covering the aggregated amount.

Appeal from Vernon Circuit Court.—*Hon. D. P. Stratton,* Judge.

AFFIRMED.

*M. T. January* for appellant.

(1) "Fraud may be presumed in equity, but must be proved at law. Therefore a court of equity will grant relief upon the ground of fraud established by presumptive evidence which courts of law would not always deem sufficient to justify a verdict." King v. Moss, 40 Mo. 551. (2) A sale under a valid deed of trust will be set aside and a subsequent incumbrancer permitted to redeem, where such sale is procured to defeat the subsequent incumbrance. Findley v. Findley, 93 Mo. 493.

*J. B. Johnson* for respondent.

(1) The rule is the fraud must be proved and can not be presumed. Robinson v. Dryden, 118 Mo. 539. (2) A legal act done legally can not be made a fraud. Barr v. Cubbage, 52 Mo. 414.

BURGESS, J.—This is a suit in equity by plaintiff, a mortgagee, to set aside as fraudulent the foreclosure of a prior mortgage by the holder, defendant Meyers, on two hundred acres of a farm consisting of two hundred and eighty acres, owned by defendant Schneider, and to permit plaintiff to redeem, and also to set aside as fraudulent a deed to defendant Gee, covering the entire two hundred and eighty acres.

The trial court rendered a decree setting aside the deed by which the eighty acres not included in the Meyers mortgage was conveyed to Gee but rendered judgment against plaintiff as to the balance of the land. In due time plaintiff filed its motion for a new trial, which being overruled, plaintiff appeals.

About January 15, 1894, defendant Schneider owned a

farm in Vernon county, containing about two hundred and eighty acres, upon which there were incumbrances as follows:    A mortgage in favor of the Mutual Benefit Life Insurance Company, dated February 1, 1889, on eighty acres of said land to secure the payment of one thousand dollars.

To the Equitable Mortgage Company $1,000, dated February 1, 1887, covering the 200 acres of land in controversy.

There was also a small commission mortgage to the Equitable Mortgage Company covering the same land.

To Conkling Brothers, bankers of Nevada, $500, dated October 8, 1892, covering the entire 280 acres.    At this time the Conkling Brothers' trust deed had been reduced to $100 by payments made by Schneider.

With a view of consolidating his indebtedness and discharging the aforesaid incumbrances, Jacob Schneider on January 15, 1894, applied to Davis Brothers, of Nevada, Mo., who were the local agents of the Central Trust Company of St. Louis, for a loan of $2,200, offering said farm of 280 acres as security.

Accordingly a contract was entered into by Schneider with said Central Trust Company wherein he "authorized and empowered the Central Trust Company to procure for him a loan of $2,200 at six per cent for five years, etc." and at the same time signed a written application therefor wherein he stated that "I do hereby appoint the Central Trust Company of St. Louis, Mo., as my agents to procure for me a loan of $2,200 from — for a term of five years." Said contract also contained this provision:    "I hereby authorize and empower my said agents to pay off and discharge of record all and every incumbrance of whatever kind and nature found to be a lien or cloud on said premises."    The Central Trust Company took this application to the Citizens Insurance Company, the plaintiff herein, and the same was accepted, and on April 2, 1894, a trust deed was executed

by Jacob Schneider to the Citizens Insurance Company securing Schneider's note for $2,200, as specified in his said application. This money was by plaintiff paid over to the Central Trust Company, who used $1,000 of it in taking up and discharging of record the trust deed in favor of the Mutual Benefit Life Insurance Company, covering the eighty acres as aforesaid.

This left $1,200 in the hands of the Central Trust Company—not enough to pay the Equitable Mortgage Company debt of $1,000, together with commission mortgage and the Central Trust Company's commission of $112, and there was besides the Conkling mortgage to be discharged of record.

In the meantime the Central Trust Company failed, being utterly insolvent, the unsecured creditors receiving no dividend. Schneider understood that he was to raise the money needed to pay off the balance of the Conkling Brothers mortgage, amounting to $100, as there would not be sufficient of the new loan left for that purpose in the hands of the Central Trust Company, and the reason he did not pay Conkling Brothers was because he learned of the failure of the Central Trust Company before the old mortgage to the Equitable Mortgage Company had been paid and he did not feel able to carry both incumbrances.

On October 20, 1894, the Conkling Brothers trust deed was foreclosed and the whole 280 acres was bid in by G. F. and I. W. Conkling for $114, and a trustee's deed executed reciting that "all of said land was sold in one lot or body at the request of the mortgagor and mortgagee made to me on that day." Jacob Schneider continued to live on the land, and it does not appear that he was either disturbed in his possession or that he paid any rent to Conkling Brothers.

On August 15, 1895, nearly a year after the said foreclosure, Conkling Brothers quitclaimed the 280 acres to defendant, Samuel Gee, for an expressed consideration of

$250.65. Gee was Jacob Schneider's son-in-law, and does not claim to have paid but $50 of the purchase price. The balance, $200, was borrowed by Jacob Schneider from defendant, Peter Meyers.

On the day following this purchase, to-wit, August 16, 1895, Peter Meyers bought from Conkling Brothers the $1,000 note and trust deed and also the small commission note, heretofore spoken of as the Equitable Mortgage Company trust deed. Conkling Brothers had previously purchased this trust deed from the Equitable Mortgage Company.

Plaintiff not receiving any payment by way of interest from Schneider undertook to foreclose its trust deed, and sale was made January 14, 1896. Peter Meyers was present and bid $900, but plaintiff became the purchaser and received a trustee's deed. It appears that Peter Meyers had foreclosed the Equitable mortgage on January 10th, four days before, and himself became the purchaser on a bid amounting to the debt and had received a trustee's deed for the 200 acres. It does not appear that Meyers demanded interest of either Schneider, Gee or the plaintiff before foreclosing. Schneider continued to live on the land under an agreement, it is claimed, to pay $150 a year rent.

On February 15, 1896, Peyton Carr, vice-president of the plaintiff company, came to Nevada and made Peter Meyers a tender of the sum due him on his mortgage and demanded a conveyance of the land.

With respect to what occurred at the time this tender was made Meyers testifies as follows:

"Q. Did you tell him you would see Jake?"

"A. That may be; I do not remember."

"Q. Is not that what you did say?"

"A. I can not tell you; would not swear one way or the other."

On the same subject Schneider says:

"Q. Do you mean to tell the court that he [Meyers] did not talk about it at all?"

"A. I did not say that."

"Q. That is what I am trying to get out of you?"

"A. I knew from you that the man was here from the company, but he did not come out on the place."

"Q. I asked you if you did not talk to Peter Meyers?"

"A. Yes; I suppose I did."

"Q. What did you talk about?"

"A. I can not recollect what we talked about. I think he told me what he offered him."

"Q. What who offered?"

"A. The man from St. Louis."

Accompanying the brief of defendant and preliminary thereto, they filed a motion to strike out from plaintiff's abstract of the record certain parts thereof for the reason that the matters and things therein stated were not preserved by bill of exception as required by law, and therefore constitute no part of the record in this cause, but from the view that we take of the case, we deem it unnecessary to pass upon that question, and will pass upon the merits of the case.

We have examined the record in this case with a good deal of care to find if possible some evidence which would justify the contention of plaintiff, but have been unable to do so. Meyers paid his own money for the claim of the Equitable Mortgage Company. Schneider had nothing whatever to do with it. There was not even a suspicion of fraud connected with the purchase by Meyers of this claim, or of the sale of the two hundred acres of the land thereunder, at which he became the purchaser.

The allegations in the petition are by no means sustained by the evidence, and the court correctly so held.

Finding no reversible error in the record we affirm the judgment. *Gantt, C. J.,* and *Sherwood, J.,* concur.